

FILED

APR - 7 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1

2

3

4

5

6

7

8

9                  UNITED STATES DISTRICT COURT

10                EASTERN DISTRICT OF CALIFORNIA

11                     ----oo0oo----

12

13 AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANIES,

14                          NO. CIV. S 01-1381 FCD PAN

         Plaintiff,

15

     v.                       MEMORANDUM AND ORDER

16

MASON & THOMAS, et al.

17

         Defendants.

18

                    ----oo0oo----

19

20      This matter is before the court on the motion for summary

21 judgment or, alternatively, summary adjudication by defendants

22 Mason & Thomas, Bradley Thomas, and Stephen Mason (collectively

23 "defendants").  Plaintiff American National Property and Casualty

24 Companies ("plaintiff" or "ANPAC") opposes defendants' motion.

25 For the reasons discussed below, defendants' motion for summary

26 judgment, including the alternative requests for summary

27 adjudication, are DENIED.

28 ///

85

**BACKGROUND**

**1.    The Underlying Litigation: <u>Jones v. May</u>**

ANPAC insured Kevin and Nancy May ("Mays") under an automobile liability policy with limits of $100,000 per person and $300,000 per occurrence.  On September 1, 1997, Nancy May injured Janet Jones ("Jones") in an automobile collision in Sacramento County.  On August 25, 1998, Jones sued Mays (ANPAC's insureds) in Sacramento Superior Court (the <u>Jones</u> action).

On October 23, 1998, ANPAC hired the law firm of Mason & Thomas to handle the Mays defense in the <u>Jones</u> action.  On January 22, 1999, the attorney for Jones offered to compromise the case by sending defendants a section 998[1] offer (the "998 offer") for the $100,000 policy limit.  Defendants transmitted the 998 offer to ANPAC by letter dated February 1, 1999.  In analyzing the 998 offer, defendants wrote, "I believe the demand is premature because we have not yet had an opportunity to develop the medical picture in this case."  (Letter from Thomas to Desmuke of 2/1/99, filed in Decl. of Richard D. Oppenheimer, Ex. 4.)  Defendants did not attempt to extend the 998 offer pending further discovery.  (Dep. of Bradley Thomas, filed in Decl. of Robert D. Oppenheimer, Ex. 8 at 105:6.)

On April 13, 2000, Jones underwent lumbar surgery.  Defendants did not discover Jones had surgery until July 7, 2000,

---

[1]  The offer was made pursuant to California Code of Civil Procedure § 998 which allows any party to serve "an offer in writing upon any other party to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time."  Cal. Civ. Proc. Code § 998.

1  when they appeared at a non-binding arbitration.  (Letter from
2  Thomas to Desmuske of 7/13/00, filed in Decl. of Richard D.
3  Oppenheimer, Ex. 6.)  Defendants arrived at the arbitration and
4  were "caught completely off guard" by the Jones surgery.  (Id.)
5  The arbitrator returned an award for $1,291,562.00 in favor of
6  Jones.

7      Following the arbitration award, defendants wrote to ANPAC
8  indicating the company had three options: pay the arbitration
9  award, negotiate a settlement, or try the case to a jury.
10 (Letter from Thomas to Desmuske, filed in Decl. of Robert A.
11 Desmuske, Ex. 10.)  In the same letter, defendants state, "the
12 third option is not in my clients' best interest unless ANPAC
13 agreed to pay the entire amount of the verdict even if it
14 exceeded the policy limit."  (Id.)  Defendants never advised
15 ANPAC that a conflict of interest existed or formed an opinion
16 about the value of the Jones case.  (Dep. of Bradley Thomas,
17 filed in Decl. of Richard D. Oppenheimer, Ex. 13 at 107:21.)

18     After rejecting the arbitration award, ANPAC offered to
19 settle the Jones matter by paying the policy limits but that
20 offer was rejected.  ANPAC then fired defendants and retained new
21 attorneys to resolve the Jones case.  ANPAC subsequently settled
22 Jones for $1,860,000.00

23          **2.    The Legal Malpractice Claim**

24     On July 18, 2001, ANPAC filed suit in diversity against
25 defendants alleging legal malpractice and breach of contract.
26 ANPAC seeks damages for the amount of settlement paid above the
27 policy limits and for legal fees incurred following defendants'
28 termination.  ANPAC alleges defendants failed to competently

                                3

1  advise the company about the nature of exposure in the <u>Jones</u>

2  case.   In particular, ANPAC claims defendants never assessed

3  damages or expressed an opinion regarding the settlement value of

4  <u>Jones</u>.

5                          **STANDARD**

6       Summary judgment is appropriate when "the pleadings,

7  depositions, answers to interrogatories, and admissions on file,

8  together with affidavits, if any, show that there is no genuine

9  issue as to any material fact and that the moving party is

10 entitled to a judgment as a matter of law."   Fed. R. Civ. P.

11 56(c).   One of the principal purposes of the rule is to dispose

12 of factually unsupported claims or defenses.   <u>Celotex Corp. v.</u>

13 <u>Catrett</u>, 477 U.S. 317, 325 (1986).

14      In considering a motion for summary judgment, the court must

15 examine all the evidence in the light most favorable to the

16 non-moving party.   <u>United States v. Diebold, Inc.</u>, 369 U.S. 654,

17 655 (1962).   If the moving party does not bear the burden of

18 proof at trial, he or she may discharge this burden of showing

19 that no genuine issues of material fact remain by demonstrating

20 that "there is an absence of evidence to support the non-moving

21 party's case."   <u>Celotex</u>, 477 U.S. at 325.   Once the moving party

22 meets the requirements of Rule 56 by showing there is an absence

23 of evidence to support the non-moving party's case, the burden

24 shifts to the party resisting the motion, who "must set forth

25 specific facts showing that there is a genuine issue for trial."

26 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

27      Genuine factual issues must exist that "can be resolved only

28 by a finder of fact, because they may reasonably be resolved in

                              4

1  favor of either party." Id. at 250.  In judging evidence at the
2  summary judgment stage, the court does not make credibility
3  determinations or weigh conflicting evidence.  See T.W. Elec.
4  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626,
5  630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd.
6  v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence
7  presented by the parties must be admissible.  Fed. R. Civ. P.
8  56(e).  Conclusory, speculative testimony in affidavits and
9  moving papers is insufficient to raise genuine issues of fact and
10 defeat summary judgment.  See Falls Riverway Realty, Inc. v. City
11 of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill
12 Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

13 **A.   Legal Malpractice Claim**

15     The elements of legal malpractice are: "(1) the duty of the
16 professional to use such skill, prudence and diligence as other
17 members of the profession commonly possess and exercise;
18 (2) breach of that duty; (3) a causal connection between the
19 negligent conduct and the resulting injury; and (4) actual loss
20 or damage resulting from the professional negligence."  Nichols
21 v. Keller, 15 Cal. App. 4th 1672, 1682 (1993).  By accepting
22 employment to render legal services, an attorney "impliedly
23 agrees to use ordinary judgment, care, skill, and diligence in
24 the performance of the tasks he or she undertakes."  Id.

25     **1.   Case-within-a-Case v. Transactional**

26     The traditional case-within-a-case format for legal
27 malpractice actions is the proper method of proving the elements
28 of causation and damages when the malpractice involves negligence

5

in the prosecution or defense of a legal claim.  <u>Piscitelli v. Friedenberg</u>, 88 Cal. App. 4th 953, 973 (2001).  However, when the legal malpractice takes place in the context of business transactions, "causation and damages may be more simply established under rules applicable to all negligence claims and the case-within-a-case procedure is not utilized."  <u>California State Auto. Assn. Inter-Insurance Bureau v. Parichan, Renberg, Crossman & Harvey</u>, 84 Cal. App. 4th 702 (2000) [hereinafter "<u>CSAA</u>"].

In order to determine whether to apply either the case-within-a-case method or the transactional approach for proving causation and damages, courts consider the nature of services provided by the attorney.  <u>CSAA</u>, 84 Cal. App. 4th at 711, 713 n.4.  In the context of a law firm retained by an insurance company to represent its insured, courts apply the transactional methodology to the legal malpractice claim.  <u>Id.</u>  This approach is required because the attorney's role is to perform litigation services for the client (the insured) "while at the same time providing the insurance company something close to business advice."  <u>Id.</u>  Therefore, as a threshold matter, the court considers the nature of services defendants provided ANPAC to determine whether the case-within-a-case or the transactional approach applies to plaintiff's legal malpractice claim.

In this case, ANPAC retained defendants, pursuant to insurance policy obligations, to defend its insureds in a personal injury lawsuit.  In this unique setting, the legal malpractice claim is transactional in nature because defendants provided ANPAC "something close to business advice" in advising

6

1  and planning the course of the <u>Jones</u> litigation.  <u>Id.</u>
2  Accordingly, the court applies the transactional methodology to
3  ANPAC's legal malpractice claim.  <u>Id.</u>  The court must next
4  examine ANPAC's claim and the duties owed by defendants.

5  **2.  Defining Plaintiff's Claim and Defendants' Duty**

6  In both <u>Unigard Insurance Group v. O'Flaherty & Belgum</u>, 38
7  Cal. App. 4th 1229 (1995) and <u>CSAA</u>, the courts explored the
8  nature of duties owed to an insurance company by an attorney
9  retained to represent its insured.  In <u>Unigard</u>, the court
10 established an insurance defense attorney represents the
11 interests of both the insured and the insurer, unless those
12 interests come into conflict.  <u>Unigard</u>, 38 Cal. App. 4th at 1235.
13 Building on this finding, the court in <u>CSAA</u> identified the
14 specific duty of care owed to an insurer by an insurance defense
15 attorney.  The <u>CSAA</u> court found an insurance defense attorney
16 owes a duty to advise the insurer about the risks created by not
17 responding to, or rejecting, policy limit settlement demands
18 because insurers are obligated to evaluate, in good faith, a
19 policy limits settlement offer.  <u>CSAA</u>, 84 Cal. App. 4th at 712.

20 In this case, defendants owed a duty of care to ANPAC which
21 supports an independent right to bring a legal malpractice action
22 for alleged negligent acts committed while representing its
23 insureds.  <u>Unigard</u>, 38 Cal. App. 4th at 1235.  In accord with
24 California precedent, the court finds defendants owed a duty to
25 advise ANPAC about the risks created by not responding to, or
26 rejecting, the <u>Jones</u> policy limit demand.  <u>CSAA</u>, 84 Cal. App. 4th
27 at 712.  ANPAC reasonably expected defendants to assist it in
28 meeting an insurer's obligation to evaluate policy limit demands

1  because "this duty is exercised normally in conjunction with the
2  judgment of counsel defending the cases against the insured."
3  Id.
4                  **3.   Trier of Fact Applies the Standard of Care**
5        Having established defendants owed ANPAC a duty of care, the
6  court must articulate the applicable standard of care.  Unigard,
7  38 Cal. App. 4th at 1237.  Formulating the standard of care to be
8  applied in attorney malpractice actions is a question of law for
9  the court.  Id.  However, "once the court has formulated the
10 standard, *its application to the facts of the case is a task for*
11 *the trier of fact* if reasonable minds might differ as to whether
12 the defendants' conduct has conformed to the standard."  Id.
13 (emphasis added).  The standard of care is that of "members of
14 the profession in the same or a similar locality under similar
15 circumstances."  Id.  Thus, the issue on defendants' summary
16 judgment motion is whether undisputed evidence proves defendants'
17 advice was legally proficient enough to represent the skill,
18 prudence, and diligence that insurance defense lawyers of
19 ordinary skill and capacity commonly exercise in performing their
20 tasks.  Id.
21      Here, defendants argue summary adjudication of plaintiff's
22 malpractice claim is appropriate because the undisputed facts
23 prove ANPAC's litigation specialist, Robert Desmuke ("Desmuke"),
24 "had all the information he needed to extend a good faith
25 settlement offer."  (Def.'s Mem. of P. & A. in Supp. of Mot. for
26 Summ. J. at 6.)  Defendants also contend the undisputed facts
27 demonstrate they did not breach their duty of care to advise
28 ANPAC of the potential for exposure beyond the policy limits.

1  (Id. at 8.)   The court finds summary adjudication of ANPAC's
2  legal malpractice is inappropriate because triable issues
3  remain.[2]

4      In particular, whether defendants breached their duty of
5  care to ANPAC by adequately assessing damages and periodically
6  evaluating settlement value of the Jones action is a triable
7  issue.   CSAA, 84 Cal. App. 4th at 712.   By accepting employment
8  to render legal services, defendants impliedly agreed to use
9  ordinary judgment, care, skill, and diligence in the performance
10 of the Jones litigation.   Nichols, 15 Cal. App. 4th at 1682.   In
11 this case, defendants received a section 998 offer for the Mays'
12 policy limits but never provided ANPAC an assessment of damages
13 or an opinion regarding settlement value.   (Dep. of Bradley
14 Thomas, filed in Decl. of Richard D. Oppenheimer, Ex. 13 ("Thomas
15 Dep.") at 107:21.)   ANPAC's expert, Steven A. Lewis, opines that
16 defendants' failure to provide any assessment of damage exposure
17 or settlement value in conjunction with the 998 offer fell below
18 the standard of care required of an insurance defense attorney.
19 (Declaration of Steven A. Lewis ("Lewis Decl.") ¶ 31.)   Thus, the
20 court finds whether defendants' conduct conformed to the standard
21 of care for an insurance defense attorney is a triable issue
22 precluding summary adjudication of plaintiff's legal malpractice
23 claim.   Unigard, 38 Cal. App. 4th at 1237.

24     The court also finds whether defendant Thomas fell below the
25 standard of care by failing to provide an estimate of settlement
26

27     [2]   The factual issues outlined below are not to be
   considered an exhaustive or exclusive list of the material issues
28 of fact in this case.

1   value throughout the Jones action is a triable issue.  Id.  The

2   deposition testimony of defendant Bradley Thomas ("Thomas")

3   established that he never expressed an opinion to ANPAC regarding

4   the settlement value of the Jones case.  (Thomas Dep. at 107:21.)

5   Moreover, Thomas testified that "settlement value depends on

6   factors and considerations that are both outside my control and

7   outside of my interest," and, accordingly, settlement value is "a

8   decision for the insurance company to make."  (Id. at 107:9-12.)

9   Whether Thomas acted reasonably in not providing a settlement

10  value for the Jones action is a triable issue because an

11  insurance defense attorney owes a duty of care to advise the

12  company about the risks created by not responding to, or

13  rejecting, policy limit settlement demands.  CSAA, 84 Cal. App.

14  4th at 712.  Accordingly, defendants' motion for summary

15  adjudication of ANPAC's legal malpractice claim is DENIED.

16          **B.   Breach of Contract Claim**

17          To prove breach of contract, a plaintiff must plead and

18  prove: (1) existence of a contract, (2) plaintiff's performance

19  or excuse for nonperformance, (3) defendant's breach, and

20  (4) damage to plaintiff.  Walsh v. West Valley Mission Community

21  College District, 66 Cal. App. 4th 1532, 1545 (1998).

22          Here, plaintiff's breach of contract claim relies upon the

23  allegation that defendants' conduct during the Jones action

24  breached the express conditions imposed by ANPAC's litigation

25  guidelines.[3]  Defendants rely on the same arguments attacking

26

27          [3]  Defendants do not appear to dispute that ANPAC's
    litigation guidelines governed the parties' relationship.  (See
28                                                      (continued...)

10

ANPAC's legal malpractice claim to assert summary adjudication of plaintiff's breach of contract claim is appropriate.  The court is unpersuaded.

Whether defendants handling of the <u>Jones</u> action conformed to the obligations imposed by ANPAC's litigation guidelines is a triable issue.  Specifically, ANPAC's litigation guidelines require attorneys to provide "Routine Status Reports" that include "updated assessments as to liability and evaluation of damages."  (ANPAC Litigation Guidelines, filed in Decl. of Robert A. Desmuke, Ex. 2 at 3.)  The testimony of defendant Thomas clearly conflicts with this contractual provision when he testified, "settlement value depends on factors and considerations that are both outside my control and outside of my interest," and settlement value is "a decision for the insurance company to make."  (Thomas Dep. at 107:9-12.)  Based on this disputed evidence, the court finds whether defendants' conduct in the <u>Jones</u> case breached ANPAC's litigation guidelines is a triable issue that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  Accordingly, defendants' motion for summary adjudication of ANPAC's breach of contract claim is DENIED.

///

---

[3](...continued)
Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. at 12-13.)
Assuming defendants dispute application of ANPAC's litigation guidelines, the court must assume the guidelines apply because summary judgment requires examination of all evidence in the light most favorable to the non-moving party.  <u>Diebold</u>, 369 U.S. at 655.

1

**CONCLUSION**

2    Based on the above analysis, the court finds:

3    1.    Defendants' motion for summary adjudication of
           plaintiff's legal malpractice claim is DENIED.
4

5    2.    Defendants' motion for summary adjudication of
           plaintiff's breach of contract claim is DENIED.

6    3.    Defendants' motion for summary judgment is DENIED.

7    IT IS SO ORDERED.

8    DATED: *April 4, 2003*

9                                   _____
                                    FRANK C. DAMRELL, Jr.
10                                  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

United States District Court
for the
Eastern District of California
April 7, 2003


* * CERTIFICATE OF SERVICE * *


2:01-cv-01381


Amer Natl Property

    v.

Mason and Thomas


_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on April 7, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


Richard D Oppenheim Jr                    MP/FCD
Sylvester and Oppenheim
15910 Ventura Boulevard
Suite 1508
Encino, CA  91436

William Donald Chapman
Smith Chapman and Campbell
1800 North Broadway
Suite 200
Santa Ana, CA  92706

Bradley Stephen Thomas
Mason and Thomas
2151 River Plaza Drive
Suite 100
Sacramento, CA  95812-0868




Jack L. Wagner, Clerk

BY: _____
Deputy Clerk